## A90A0995. GOODEN v. THE STATE.
(395 SE2d 634)

Deen, Presiding Judge.

David Gooden was accused of trafficking in cocaine, was tried at a bench trial, was convicted, and appeals, contending that the trial court erred in denying his motion to suppress. *Held*:

Appellant was stopped for speeding by a City of Riverdale police officer after the officer's radar clocked him driving at 62 mph in a 45 mph zone. The officer noticed that Gooden's driver's license had expired a month earlier, and that his automobile had a dealer driveout tag although it was a used car. Gooden was arrested for these three offenses and placed in the back seat of the officer's patrol car. He was advised that a wrecker would be called if he did not have anyone who could come and pick up the car. Gooden indicated that he wanted to go to a pay phone and call someone, but the officer asked him to give the number to him and he would have someone from the police station call. Gooden also indicated that it would take 35-45 minutes to have his car picked up. The defendant never gave the name or number of anyone to be called because the officer informed him that department policy required that the vehicle be picked up in 10-15 minutes or it would be impounded. Two other police officers arrived at the scene, heard the end of the discussion about someone picking up the car, and heard Gooden consent to getting a wrecker. Appellant was taken to the police station, and the car was turned over to the

other officers, who moved it to a furniture store parking lot. An inventory search was conducted while they waited for the wrecker. One of the officers found a jumpsuit in the back seat which had $1,100 in a breast pocket and a .32 caliber automatic pistol in another pocket. As he was further checking the car, the officer noticed a loose radio speaker grill on the door on the passenger side, and the other officer noticed that the door on the driver's side had a hole but no speaker. He shined his flashlight in the hole and saw a bottle of incense and a blue object stuck up into the door about two inches above the speaker hole. He removed a vinyl bag containing what he suspected to be crack cocaine. From under the driver's seat the officer removed a brown paper bag containing two wads of aluminum foil containing suspected crack cocaine. No other contraband was discovered in the car.

In *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981), the Supreme Court upheld a similar search of the visible parts of the vehicle and a jack contained therein as a search incident to an arrest, of the immediate area of the defendant. In *State v. Escobar*, 193 Ga. App. 535 (388 SE2d 534) (1989), this court held that during a search incident to arrest the removal of a misaligned piece of molding, which had been attached to the body of the vehicle by an invisible strip of velcro, did not fall within the "plain view" doctrine and exceeded the objectives of permitting such a search because it was an unauthorized intrusion, which exposed concealed portions of the vehicle or its contents. In *Maddox v. State*, 188 Ga. App. 883, 884 (374 SE2d 810) (1988), this court applied the *Belton* rule to uphold an automobile search as a lawful search incident to arrest even though the vehicle in question was no longer occupied and the defendant had been removed from the scene.

Those cases in which this court has ruled that an impoundment was unreasonable have involved situations in which a reliable passenger or companion was present at the scene of the arrest who could have driven the impounded vehicle away or otherwise taken care of arrangements for removing the vehicle. See *Reed v. State*, 195 Ga. App. 821 (___ SE2d ___) (1990); *Strobhert v. State*, 165 Ga. App. 515 (301 SE2d 681) (1983); *State v. Ludvicek*, 147 Ga. App. 784 (250 SE2d 503) (1978). Here, no companion was present and the arresting officers testified that defendant informed them it would take 35 to 45 minutes for the person he wished to call to arrive. Moreover, evidence was presented at the suppression hearing that the vehicle bore an illegal tag. Of course, even if the person defendant wished to contact could not legally have driven the vehicle away with an improper tag, presumably that person could have arranged for towing of the vehicle to whatever location the defendant desired. However, we cannot say that the department policy requiring an arrestee's vehicle to be re-

moved within fifteen minutes is unreasonable as a matter of law. Even though the vehicle in this case had been moved off the road to a location which would cause no traffic hazard, a time requirement for removing the vehicle serves to protect the arrestee's property from theft or damage and the police department from claims for liability for property loss. Consequently, we conclude the impoundment was not unreasonable in this case and, therefore, the inventory search was not improper.

Although *Belton* has been applied in Georgia in cases similar to this one, it is not applicable where there is some necessity for the police to take custody of the vehicle and conduct an inventory search for the protection of the police department and the defendant. See *State v. King*, 191 Ga. App. 706, 707 (382 SE2d 613) (1989); Judge Beasley's special concurrence in *Maddox v. State*, supra at 885. Accordingly, the rule in *Escobar* does not apply to an inventory search, and the trial court did not err in denying the motion to suppress.

*Judgment affirmed. Carley, C. J., McMurray, P. J., Banke, P. J., Birdsong and Pope, JJ., concur. Sognier, Beasley and Cooper, JJ., dissent.*

BEASLEY, Judge, dissenting.

Gooden was a truck driver and was stopped on his way from work just after 3:00 a.m. when he was about five to ten minutes from home. He testified that he intended to have his wife come for the vehicle.

I agree that justification for the warrantless search of the vehicle could not lie on the exception that it was a search incident to arrest. The officers conducting it did not consider it as being necessary, incident to arrest, but rather considered it an inventory search after the decision had been made to impound it. The search did not occur until after defendant was on his way to the station with the arresting officer. There was not even a remote opportunity for defendant to obtain weapons or contraband from the vehicle at that point. Thus the theory underlying *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981), does not apply.

Was it a valid inventory search? No, because there was no good faith opportunity for defendant to have his wife come for the car, although the arresting officer had begun to allow an arrangement to be made, by moving the car to a safe place to await pick-up.

The question is whether it was a legitimate impound. The officers' testimony is that defendant said it would take 35-45 minutes for someone to come for his car and that they explained to him that the "unwritten policy" of Riverdale was to allow only 15 minutes. It was 3:30 a.m. and defendant intended for his wife to come, but he did not tell the officers who he wanted called or that his home was only 5-10 minutes away, after they refused to permit him to make the call.

They did not ask for the phone number or the name of the person to be called. There were three officers present at the time. The location of the car was not a hazard. Was this a reasonable offer under the circumstances?

"Impoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property. See *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976)." *Whisnant v. State*, 185 Ga. App. 51, 52 (2), 53 (363 SE2d 341) (1987). "Where the impoundment is unreasonable the resulting inventory search is invalid. [Cit.]" *State v. King*, 191 Ga. App. 706, 707 (382 SE2d 613) (1989).

"[T]he property of a citizen is protected from unnecessary intrusion or limitation of use by its owner . . . the state's right to impound [is] founded on a doctrine of necessity." *State v. Ludvicek*, 147 Ga. App. 784, 785 & 786 (250 SE2d 503) (1978). In that case the court upheld a finding of unreasonable inventory search based on lack of necessity because "we do not believe it would have been unreasonable for the arresting officer to seek instructions from [the owner] inasmuch as he had been told she was the owner, he had verified the accuracy of that information, he knew where she was located and there was an available driver to deliver the car to [the owner] which driver was an occupant of the premises where [the owner] was waiting." Id. at 787. In noting that a different result might be reached if the owner could not be located after a reasonable effort, the court implies that the police are obliged to exert some effort to secure the vehicle and the rights of privacy before impounding it. Impoundment always requires an inventory search. See also *State v. Thomason*, 153 Ga. App. 345, 348 (3) (265 SE2d 312) (1980), and Judge Shulman's dissent in *State v. Hopkins*, 163 Ga. App. 141, 146 (2) (293 SE2d 529) (1982), which illustrate that the State has the burden of showing that impoundment is reasonable as necessary. The latter correctly states, "if the impoundment of an automobile is unreasonable, the inventory search which follows is invalid, and the fruits thereof must be suppressed." The Fourth Amendment principle which must not be lost sight of is that "[i]mpoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property. See *South Dakota v. Opperman*, 428 U. S. 364 (96 SC 3092, 49 LE2d 1000) (1976)." *Whisnant v. State*, supra at 53.

In *State v. Darabaris*, 159 Ga. App. 121, 123 (282 SE2d 744) (1981), the court adopted the trial court's articulation of the following rule: " '(W)here the officer knows the identity of the owner . . . in question, he should make at least a reasonable effort to determine the owner's wishes regarding disposition of the vehicle and that only after such a reasonable effort is made would the necessity for impoundment attach.' " As reiterated there, the State's interests in im-

pounding and inventorying a vehicle are to protect the owner's property, to protect the police from potential danger, and to protect the police from false claims of stolen or lost property; the Fourth Amendment's interest is to protect the individual's right of privacy.

Here the police did not offer to call whoever it was defendant/ owner sought to have come for the car, did not ascertain who it was, did not find out from that person how long it would take for him or her to arrive. If its custody had been given to defendant's designee, the interests sought to be served by a police inventory would have been satisfied.

" ' "Factual and credibility determinations . . . made by a trial judge after a suppression hearing must be accepted by appellate courts unless such determinations are clearly erroneous." ' " *State v. Escobar*, 193 Ga. App. 535, 538 (388 SE2d 534) (1989). " 'In the absence of evidence of record demanding a finding contrary to the judge's determination [of the reasonableness of impounding the vehicle], this court will not reverse the ruling . . . .' " *State v. Thomason*, supra at 351.

Considering the evidence in favor of denial of the motion, the State failed to show, as in *Stobhert v. State*, 165 Ga. App. 515, 516 (301 SE2d 681) (1983), that impoundment was reasonably necessary and thus a valid incursion into Gooden's Fourth Amendment privacy rights. The search was not a valid exercise of the law enforcement agency's caretaking function, which was recognized in *Cady v. Dombrowski*, 413 U. S. 433, 441 (93 SC 2523, 37 LE2d 706) (1973). See also the other cases cited there.

This analysis is made solely under the strictures of the Fourth Amendment and, because defendant did not raise it, not under the mandate of the Georgia Constitution, Art. I, Sec. I, Par. XIII, which should have been considered first.

I am authorized to state that Judge Sognier and Judge Cooper join in this dissent.

DECIDED JUNE 28, 1990 —
REHEARING DENIED JULY 11, 1990 — CERT. APPLIED FOR.

*Herbert Shafer*, for appellant.
*Robert E. Keller, District Attorney, Albert B. Collier, Assistant District Attorney*, for appellee.