**FIFTH DIVISION
REESE, P. J.,
MARKLE and COLVIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**November 24, 2020**

# In the Court of Appeals of Georgia

A20A1638. STATE v. LOECHINGER.

COLVIN, Judge.

After Robert Loechinger was pulled over and arrested for driving with a suspended license, the arresting officer conducted an inventory search of the vehicle prior to impounding it. Methamphetamine was discovered in the vehicle during the course of this inventory search. Loechinger was indicted for one count of trafficking in methamphetamine and one count of driving with a suspended license. The State appeals from the trial court's grant of Loechinger's motion to suppress contraband found within the car. For the following reasons, we reverse the trial court's grant of Loechinger's motion to suppress.

When reviewing a trial court's ruling on a motion to suppress evidence, we follow three fundamental principles:

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. However, to the extent that the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts. Significantly, where controlling facts are not in dispute, such as those facts discernible from a videotape, our review is de novo. Finally, when a defendant moves to suppress evidence based on an illegal search, the State bears the burden of proving that the search was lawful.

(Citations and punctuation omitted.) *Edwards v. State*, __ Ga. App. __ (Case No. A20A0888, decided October 27, 2020).

So viewed, the evidence presented at the hearing on Loechinger's motion to suppress shows that on May 31, 2019, Officer Sheppard, an officer with the Dekalb County Police Department, was traveling south on Interstate 285 and "running tags" on the National Crime Information Center and the Georgia Crime Information Center databases when he discovered a vehicle registered to a driver with a suspended

license. The officer noticed that the database's photo of Loechinger, the car's owner, matched the person driving the car. The officer then conducted a traffic stop. The officer asked Loechinger for his license, and Loechinger could only provide him with the Georgia Identification card issued to him after his driver's license had been suspended.

The officer testified that he arrested Loechinger for driving with a suspended license, placed him in the patrol car, and asked him whether there was anyone who could come to retrieve the car. The officer testified "I believe that [Loechinger] may have said his wife, but I believe . . . she was like in Hampton, Georgia. Or I believe that's where he lived, which was – I know it was far. . . . At least an hour." The officer allowed Loechinger to call his wife. Loechinger told the officer that his wife could come retrieve the vehicle. The officer testified that it was department policy that he wait with the vehicle to be retrieved by another person, but that such policy only allowed him to wait for a "reasonable time." He further testified that if Loechinger had identified someone who could retrieve the car more quickly, he would have waited with the car until it was retrieved.

Officer Sheppard told Loechinger that he was going to have to impound his car because he could not leave it on the side of Interstate 285. The officer then called for

3

a tow truck and proceeded to do an inventory search of the vehicle. He explained that it was a department policy that "any time we impound a vehicle, we have to search the car [to] make sure there's no valuables[, because] [t]he person may complain and say something was in the car at the time of [the] impound." The officer testified that this policy required officers to inventory only valuable items found in a vehicle, such as money, jewelry or electronics. Those items would then be taken and placed in the property room for safekeeping. However, the policy did not require officers to inventory items they found to be not valuable, such as papers or kleenex. During the inventory search of Loechinger's car, the officer discovered in the center console a large plastic bag filled with a substance that tested positive for methamphetamine. He did not find anything else valuable in the car.

Loechinger was indicted for one count of trafficking in methamphetamine and one count of driving with a suspended license. Loechinger filed a motion to suppress the evidence found in the center of the car's console. The trial court granted the motion, finding that although Officer Sheppard "testified his intent was to inventory the vehicle," he did not inventory any valuables in the vehicle and only inventoried contraband. The trial court stated that it did "not credit Officer Sheppard's testimony that an impoundment was reasonably necessary [because it] was not inoperable or in

any way obstructing, or making the roadway less safe for someone to pick it up." The State appealed from the trial court's denial of its motion to reconsider.

1. The State argues that the trial court abused its discretion when it granted Loechinger's motion to suppress. We agree.

Police officers may conduct a warrantless search of a vehicle without violating the Fourth Amendment

> where the police have impounded the vehicle and, as part of the impoundment process, they take an inventory of the car's contents. Under the impound-inventory exception, where officers have a reasonable basis for impounding the car, the Fourth Amendment allows police to conduct a warrantless, non-investigatory search of the vehicle, pursuant to standard police procedures, to produce an inventory of the vehicle's contents to protect the owner's property, or to protect police from potential danger or claims for the lost or stolen property. *Thus, justification for an inventory search is premised upon the validity of the impoundment of the vehicle.*

(Citations and punctuation omitted; emphasis in original.) *Stroud v. State*, 344 Ga. App. 827, 832 (3) (812 SE2d 309) (2018).

An officer's decision to impound a vehicle is "valid only if there is some necessity for the police to take charge of the property, and police may not use an impoundment or inventory as a medium to search for contraband." (Citations and

punctuation omitted.) *Stroud*, 344 Ga. App. at 832 (3). See also *Fortson v. State*, 262 Ga. 3, 4 (1) (412 SE2d 833) (1992) (holding that police must have a valid justification for impounding a vehicle and they may not use the inventory search as a pretext for an investigatory search).

> [T]he ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment. The test is whether the impoundment was reasonably necessary under the circumstances, not whether it was absolutely necessary.

(Citation omitted.) *Bowler v. State*, 355 Ga. App. 77, 81 (3) (c) (842 SE2d 546) (2020). "[W]here the impoundment is unreasonable, then the resulting inventory search is invalid." (Punctuation omitted.) *State v. King*, 237 Ga. App. 729, 729 (1) (516 SE2d 580) (1999).

Accordingly, we first consider whether the impoundment of the car in this case was reasonably necessary. The trial court discredits Officer Sheppard's testimony that an impoundment was reasonably necessary because there was no testimony at the motion to suppress hearing that the car "was not inoperable or in any way obstructing, or making the roadway less safe for someone to pick it up." Our de novo review of the portion of Officer Sheppard's body-cam video shown to the trial court belies this

6

finding, however. See *State v. Depol*, 336 Ga. App. 191, 191 (784 SE2d 51) (2016) ("[T]o the extent that the controlling facts are undisputed because they are plainly discernable from the patrol car-mounted video recording . . . we review those facts de novo) (citations and punctuation omitted). Accord *Vergara v. State*, 283 Ga. 175, 178 (1) (657 SE2d 863) (2008) (applying de novo review of facts discernable from a videotape). This video footage shows that Loechinger's car was parked on a narrow shoulder of Interstate 285, very close to Exit 39A, during what appears to be dense rush-hour traffic. In the motion to suppress hearing, the trial court admitted that "it seems to be dangerous, of course, looking at the video[,]" but hinged its decision on the fact that there was "no testimony that [the] car was obstructing or causing any issues."

"It is well established that a police seizure and inventory is not dependent for its validity upon the absolute necessity for the police to take charge of property to preserve it. They are permitted to take charge of property under broader circumstances than that." (Citations and punctuation omitted.) *Pierce v. State*, 194 Ga. App. 481, 481 (1) (391 SE2d 3) (1990). Further, "[t]he argument that an automobile must be an impediment to traffic before it can be lawfully impounded has been rejected." (Citation omitted.) Id. at 481 (1) (impoundment of automobile

7

following driver's arrest for driving with suspended license was lawful because the fact that the driver was the sole occupant of car gave officer discretion to impound vehicle when there was no one other than arrestee to drive it); *Scott v. State*, 232 Ga. App. 337, 339 (1) (501 SE2d 255) (1998) (impoundment of vehicle after driver's arrest was reasonably necessary even though it was not a hazard to other drivers because it was parked on private property; the vehicle and its contents would be exposed to risk of theft or damage if it was not impounded). Based upon our de novo review of the video footage, we conclude that Officer Sheppard's decision to impound the vehicle was reasonably necessary under the circumstances.

2. We next consider whether Officer Sheppard conducted an inventory search of Loechinger's car according to police procedures.

> [S]ubsequent to a reasonable impoundment, the contents of an impounded vehicle are routinely inventoried to protect the property of the owner, protect the officers against claims for lost or stolen property, and protect the police from potential danger. . . . [I]nventories conducted by the police pursuant to standard police procedures are deemed to be reasonable under the Fourth Amendment.

(Footnote omitted.) *Davis v. State*, 331 Ga. App. 171, 174 (769 SE2d 183) (2015).

8

In arriving at its decision, the trial court took into account that Officer Sheppard did not inventory any valuables in the vehicle and only inventoried contraband. However, Officer Sheppard testified it was the policy of his department to inventory only those items that he actually removed from a car prior to it being impounded, limited to items that he deemed to be valuable, such as electronics, money and jewelry. In the instant case, Officer Sheppard testified that he did not observe any such valuable items in the car during his inventory search.

"Because evidence showed that the impoundment of the car was lawful and that the search was conducted in good faith pursuant to standard police department procedure for a valid inventory purpose," the trial court's grant of the Loechinger's motion to suppress was error. See *Armstrong v. State*, 325 Ga. App. 690, 692 (1) (754 SE2d 652) (2014) (impoundment of defendant's vehicle following a traffic stop was reasonably necessary where vehicle's registration had been cancelled, driver and sole passenger were under arrested, and the owner of private property where car was parked did not want the car to remain on the property).

*Judgment reversed. Reese, P. J., and Markle, J., concur*.

9